## W. P. PARDUE v. J. L. B. JAMES ET AL.

### No. 6310.

**1. Defense in Injunction Suit.** — A defendant in a judgment against him of forcible entry and detainer rendered on appeal in the County Court sought by injunction to restrain the enforcement of the writ against him as to a tract of forty or forty-nine acres alleged not to have been described in the judgment nor in the process. The process was executed before the service of the writ of injunction. The defendant in the injunction suit answered, and upon exceptions to the answer, *held:*

1. The District Court having acquired jurisdiction of the cause would proceed to do full equity between the parties and determine the whole case.

2. The defendant could show that the judgment of the County Court did include in its description the forty-nine acres, and also could set up any equitable defense that would defeat a recovery by the plaintiff had the suit been an ordinary one for the land.

3. Defendant could show by former deeds and transactions what construction should be put upon the description of the land, as well as to show that the plaintiff himself was committed to that construction.

**2. Estoppel—Pointing out Lines to a Purchaser.**—See case where it was not improper to charge the jury as follows: "If a party selling land points out his land to the purchaser and thereby induces the purchaser to believe he is buying the land included within said lines he will in law be deemed to have parted with the land included within the lines so pointed out by him, if any."

**3. Erroneous Instruction.**—Appellant can not complain of a charge which is erroneous in following views of the case held too restricted and favorable to the party complaining. He can not object to error in his favor.

APPEAL from Hill. Tried below before Hon. J. M. Hall.

The opinion states the case.

*A. P. McKinnon,* for appellant. — 1. The appellees who have been enjoined from ejecting appellant from the possession of the 49-acre tract of land on the ground that said tract is not included in the description of the land described in the writ of possession by virtue of which appellees pretended to act in making said ejectment, can not justify themselves in such proceeding by answering the injunction that they were otherwise entitled to the possession of said tract of land in equity, law, or otherwise, and such answer presents no valid defense to appellant's petition for injunction. Rev. Stats., art. 2898; Burnley v. Cook, 13 Texas, 587; Jeffus v. Allen, 56 Texas, 197.

2. The plea setting up a purchase of land was immaterial and consti-

tuted no defense to appellant's petition for injunction, and therefore a charge upon evidence introduced by virtue of said plea is erroneous.

3. It is law that the judgment of the court is conclusive of the issues litigated in a suit, and it is a question of law and not of fact what is the legal effect of said judgment. It is a mixed question of law and fact what land may be described by field notes set out in a judgment. Hurt v. Evans, 49 Texas, 311; Hough v. Hill, 47 Texas, 148; Markham v. Carothers, 47 Texas, 22; H. & T. C. Ry. v. Terry, 42 Texas, 451.

*Jo Abbott* and *Thomas Ivy*, for appellees. — 1. In an injunction suit plaintiff can not complain of and seek relief against defendant on one ground alone when defendant sets up other grounds constituting a good defense; the court having once obtained jurisdiction can proceed to determine the merits of the cause and is not confined to the single issue which plaintiff chooses to present or rely upon. Burnley v. Cook, 13 Texas, 587; Willis v. Gordon, 22 Texas, 241; North v. Swing, 24 Texas, 193.

2. If a party in selling land to another points out certain boundaries and indicates the same, and induces the purchaser to believe that he is purchasing to said lines or boundaries, he is estopped from denying that he sold to said boundaries, and the charge instructing in accordance therewith is not irrelevant when the pleadings and evidence in the case justify the same, nor is the same misleading to the jury. For authorities we submit the rule that a charge should be relevant to the pleading and evidence. Tied. on Real Prop., art. 725.

3. While the judgment is conclusive of the matters therein litigated still extraneous facts and evidence are admissible to show what was therein litigated, and if the issue had been tried in the County Court involving the question whether or not the forty-nine-acre piece of land was included in the field notes of the judgment and deeds parol evidence would be admissible to establish such fact. Bryan v. Bridge, 10 Texas, 149; Edrington v. Kiger, 4 Texas, 89.

COLLARD, JUDGE.—Plaintiff sues by injunction to restrain the execution of a writ of restitution issued from the County Court upon a judgment rendered in a proceeding of forcible detainer against him and J. D. Pardue, upon the ground that 49 acres of the land claimed by him is not embraced in the description of the land as given in the judgment or the writ. Defendants pleaded and the court admitted evidence to show that the description contained in the judgment was not controlled by the call for distance on the south line of the survey.

Plaintiff based his right to the injunction upon the one fact that the description of the land in the judgment and writ did not embrace the 49 acres.

Defendants by way of answer set up a conveyance from W. T. Henry

and others to J. H. Fisher out of the McKinney & Williams survey of 405 acres of land, the south line of which is described as extending to the southeast corner of the McKinney & Williams, and then a deed by Fisher to J. D. Pardue and R. M. Grantham to one hundred acres out of the southeast portion of the 405-acre tract, which calls for the southeast corner of the same.

Defendants also answered that at the time of sale to Pardue and Grantham they as part consideration for the land executed to Fisher their four promissory notes for $420 each, retaining a vendor's lien on the land, and that they entered into possession of the land, including the 40 acres in dispute; that Fisher in making his deed to Pardue and Grantham intended to and did in fact convey to them all the land up to the southeast corner of the 405-acre tract and the southeast corner of the McKinney & Williams survey, and that the deed conveyed an excess of 40 acres; that Fisher transferred the four notes to defendants I. L. B. and W. H. James, who sued on them, suing the makers and also W. P. Pardue, as being in possession of the land; that prior to the suit on the notes Grantham sold his half interest in the land to W. P. Pardue, by deed describing the land exactly as it was described in the Fisher deed to J. D. Pardue and Grantham; that J. D. Pardue also conveyed the 40 acres to his father, W. P. Pardue, who knew that it was included in the deed from Fisher; that after suit on the notes propositions were made by J. D. Pardue and Grantham to James and James to reconvey the land to them in consideration of the cancellation of the notes and the dismissal of the suit, which proposition James and James declined to accept until W. P. Pardue also agreed to it and agreed to transfer the land to them; that all parties agreed, and W. P. Pardue and wife executed a deed to J. D. Pardue and Grantham on the 19th of August, 1885, and J. D. Pardue and Grantham on the same day executed and delivered a deed to defendants, and that in all the deeds the land was described as in Fisher's deed to J. D. Pardue and Grantham, and that this was done in consideration of the surrender of the notes and the dismissal of the suit; that it was agreed and understood by all the parties that the deeds conveyed the land in controversy, and to the southeast corner of the McKinney & Williams survey; that pending negotiations for the cancellation of the notes and dismissal of the suit J. D. Pardue pointed out and indicated upon the land the boundaries as including the land in dispute; that at the time of the execution of said deeds it was agreed that Grantham and J. D. Pardue might remain in possession of the land until the 15th day of November following, at which time they were to deliver possession to defendants, but that J. D. and W. P. Pardue had failed to so deliver the same, whereupon defendants brought suit in the Justice Court against J. D. and W. P. Pardue in an action of forcible detainer, where the Pardues recovered judgment, from which defendants herein appealed to the County Court,

where they recovered judgment; that upon the trial of the forcible detainer suit in the County Court the question as to whether the 40 acres, or 49 acres, were included in the bounds of the description of the complaint (which was the same as in the Fisher deed) was fully and fairly submitted to the jury, who finding for the defendants herein, the judgment mentioned in plaintiff's petition for injunction was rendered; and further, that the 40 or 49 acres were included in the land described in the judgment.

It was in proof that the deed to Fisher for the 405-acre tract called to extend to the southeast corner of the McKinney & Williams survey, and that to so extend the south line it had an excess of 40 or 49 acres; that he bought all the unsold balance of the survey from Henry and others; that no actual survey was made at the time of his purchase, but that afterwards Wade made a survey of it and stopped the south line short of its southeast corner 223½ varas. It was also in proof that it was his intention by the deed to Pardue and Grantham to convey all the land before unsold by him of his 405-acre tract. He swears that he was not satisfied with Wade's survey, and proceeds: "I finally sold or intended to sell all the balance to R. M. Grantham and J. D. Pardue, 100 acres, more or less. Wade was sent for to survey the land (i. e., to run off the 100 acres). Wade began at the southeast corner of the Cooper tract (previously sold by Fisher) and ran north 60 degrees east for some distance and stuck down his jacob's staff; he then came back some distance and drove up some stakes saying that was the corner. I was not satisfied with it and told him so at the time, but Wade said that was the corner of the McKinney & Williams survey. I was not satisfied, and told him such was not the corner, but from this point Wade went on to run the other lines. When I made the deed to Grantham and Pardue I told them I would deed them all the land to the McKinney & Williams corner; that there was an excess, but I wanted to sell all. They paid me at the time $200 and gave me four notes. * * *

"Grantham and Pardue then went into possession of that part of the land which was improved to within a few varas of where Wade fixed the southeast corner, and also under said deed took possession out to the Merriman line (lying east of the McKinney & Williams survey). I told them all the time I would make them a deed to the excess if the deed already made did not cover it, but the deed was intended to cover the whole. * * * Grantham after this sold out to plaintiff in this suit and he promised to pay Grantham's part of the debt. I waited some time on him but could get nothing out of him. Being compelled to have money I sold the notes to I. L. B. & W. H. James, telling them at the time that the notes were given for the whole of the land including the excess of 49 acres. They brought suit against Grantham and J. D. and W. P. Pardue on the notes; but the matter was settled, they all agreeing to

deed the land back to defendants, who in consideration thereof canceled the notes and withdrew the suit. I told the Jameses that if they made any settlement with the Pardues by which he took the land I would make him a quit claim deed to the excess if the deed did not cover all of it, which I have since done—since this suit was brought."

On cross-examination he testifies that he had never since claimed any part of the land; that he in good faith sold Pardue and Grantham the whole of it, and told them that the stakes put there by Wade was not the true southeast corner; that he would sell out to the full extent of the Mc-Kinney & Williams survey on the Merriman line. They understood this and took possession out to the line and southeast corner where Holland afterwards established it. W. P. Pardue got possession under Grantham and J. D. Pardue.

Fisher's deed to Pardue and Grantham called for the southeast corner of the 405-acre tract.

It was proved that there was an excess of 49 acres in the survey, and to stop the south line where Wade put down the stakes according to the call for distance the tract would contain 100 acres. It was in proof that before defendants brought suit on the notes I. L. B. James went to see W. P. Pardue to collect his money, and while there Pardue showed him where the line of the survey was and the southeast corner, claiming that there was an excess, and offered for a consideration of $300, besides the cancellation of the notes, to reconvey all the land. James proposed to cancel the notes if all the parties would convey to him and his son the land. No settlement was made and suit was brought on the notes. A short time afterward Grantham came to the elder James and said that W. P. Pardue had sent him to settle the suit, and proposed that if the suit was withdrawn the Pardues would reconvey to defendants the land. James replied that he would do so. Afterward the parties met for the purpose, when a settlement was made as follows: W. P. Pardue and wife executed a deed to J. D. Pardue and R. M. Grantham for the land as described in Fisher's deed to them, calling for the southeast corner of the Fisher 405-acre tract; and J. D. Pardue and Grantham executed a deed to the defendants for the land with the same description; defendants gave W. P. Pardue an order on their attorneys for the notes, which were surrendered on presentation of the order, and defendants dismissed their suit. It was also proved by the testimony of both defendants that at the time the deeds were executed the Pardues agreed to deliver possession to James and James of all the land, including the 49 acres, on the 15th of the following November. This time was given to enable them to gather their crops. The elder Pardue testified that he did not intend to sell or reconvey the 49 acres, and that in pointing out the lines and corners to I. L. B. James he only pointed out the limits of the excess.

The Pardues failing to deliver all the land at the expiration of the time

agreed on, James and James brought their action of forcible detainer, finally resulting in judgment for complainants. The complaint described the land as in the deed from Fisher to J. D. Pardue and Grantham. The judgment of the County Court contained the same description, as did also the writ of restitution. The sheriff executed the writ about noon on the 16th of June, and says that some hours afterwards he heard of the injunction. Judgment was rendered for defendants in the injunction suit and plaintiff appealed.

His first assignment of error is that the court erred in overruling his special exception to that part of defendants' answer which set up the various transfers, because they constituted no defense and in no way tended to show that the 49 acres were included in the description in the judgment in the forcible detainer proceeding or in the writ of restitution.

The gist of plaintiff's claim to equitable relief by injunction, as before stated, was that the judgment in the action of forcible detainer did not embrace in its description the 49 acres of land.

Appellant's idea seems to be that the case must be tried solely upon the issues made in the bill for injunction. This is not correct. The court having acquired jurisdiction of the cause would proceed to do full equity between the parties. It would hear and determine the whole case. The defendants could not only show that the judgment of forcible detainer did include in its description the 49 acres in controversy, but they could set up any equitable defense that would defeat a recovery by plaintiff had the suit been an ordinary one for the property. They could by former deeds and transactions show what construction of right and good conscience should be put upon the description of the land, as well as to show that plaintiff himself was committed to that construction. Willis v. Gordon, 22 Texas, 243; Bourke v. Vanderlip, 22 Texas, 222; North v. Swing, 24 Texas, 193.

Fisher's 405-acre tract called to extend the south line of that survey to the southeast corner of the McKinney & Williams survey, and though the line so extended would be longer than the distance called, that corner would be the terminus of the line. Fisher's deed to Grantham and J. D. Pardue to the 100-acre tract called for the southeast corner of the 405-acre tract, and this coupled with the allegations and proof that Fisher intended to convey all the land to this corner, notwithstanding the distance would not reach the point, clearly shows what the deed did actually convey. The judgment in question has the same description as the deed, and all the pretended rights of the plaintiff having originated in this deed, it and the deed to Fisher should be looked to, with such explanations as might be shown, to ascertain the meaning of the description in the judgment. In addition to this, by reference to these former transactions it is seen that the defendants James and James took the place of

Fisher in the sale, and the plaintiff took the place of J. D. Pardue and R. M. Grantham.

Plaintiff claimed under Grantham and J. D. Pardue, assuming their liability to Fisher, and he could be in no better attitude to resist the claim of defendants than could J. D. Pardue and Grantham to resist the claim of Fisher. He could not in one breath say the Fisher deed did convey the entire 149 acres in order to hold the excess under that deed, and then in the next breath say that his deed back to J. D. Pardue and Grantham, and their deed to James and James (holding the vendor's lien notes executed to Fisher in the original purchase), by which there was in effect a rescission of the original sale, did not convey the entire 149 acres. It was proper and right that these issues should be heard and determined in this proceeding.

Appellant complained of the charge of the court as follows:

"The court erred in his charge to the jury in that part of his charge wherein he instructs the jury as follows: * * * 'If a party selling land point out the lines of his land to the purchaser, and thereby induces the purchaser to believe he is buying the land included within said lines, he will in law be deemed to have parted with the land included within the lines so pointed out by lines if any.'

"1. Because said charge is irrelevant and not warranted by the issue made by the pleadings in this case.

"2. The said charge was calculated to mislead the jury and prejudice the jury against the appellant, because the sole question for their decision was whether the 49 acres was included within the description of the 100-acre tract, and not in reference to the sale or purchase of any land.

"3. The said charge is in conflict with subdivision four of the court's charge in the latter part of said subdivision."

It was alleged in the answer of defendants that J. D. Pardue pointed out the east boundary of the land conveyed by Fisher's deed to him and Grantham as embracing the 49 acres excess, and that he so pointed it out to I. L. B. James during the time of negotiations to cancel the notes by a reconveyance of the land. The assignment of error does not call for an expression of opinion as to whether there was evidence showing that he did so point out the boundary, but there was evidence showing that he agreed that such was the boundary.

We have already seen that the sole issue in the case was not as to whether the judgment described the land so as to take in the 49 acres, unaided by other extrinsic facts, and it is unnecessary to repeat what has been said upon that subject. But it is contended that the charge is in conflict with the following extract from the court's charge:

"And if you believe said judgment was not rendered for the land described by plaintiffs as a 49-acre tract, and that no writ of restitution was issued upon said judgment commanding the sheriff to place said I. L. B.

and W. H. James in possession of said 49 acres, etc., then you will find for plaintiff."

From what will be seen in the foregoing this charge is more favorable to plaintiff than it should have been; but if plaintiff pointed out the boundary, as the evidence shows he did do, to I. L. B. James, we are not prepared to say under the facts and circumstances of the case it would not be a means by which the jury might say the judgment and writ described the land as claimed by defendants to embrace the 49 acres.

Appellant assigns the following as error: "The fourth part or subdivision of the court's charge is erroneous and calculated to mislead the jury and prejudice the cause of appellant, because the court therein instructs the jury 'that the only issue for them to find is what land was adjudicated by a judgment of the County Court of Hill County, * * * and whatever was there adjudicated by said court as to the possession of the land therein is final as far as any action can be had in this suit.' Because the judgment of the County Court in said cause is conclusive of the matters litigated in said cause, and as to the legal effect of said judgment it is a question of law and not of fact."

The only error we are able to see in this charge is on the side of the appellant. It is in line with his theory that the jury could look only to the judgment to ascertain what land it applied to, while it has been shown that previous transactions and other deeds could be referred to in explanation of the description in the judgment.

The last assignment of error is that the verdict is not supported by the evidence. It is unnecessary to review the testimony to show that this assignment of error is not well taken. It is sufficient to say that the verdict is in accord with the testimony and the merits and justice of the case.

Finding no reversible error in the charge or the rulings of the court, and believing that the verdict of the jury under the testimony is such as should have been given, we conclude the judgment of the court below should be affirmed.

*Affirmed.*

Adopted June 11, 1889.